JOSEPH ILLSLEY, *Adm'r*, *in Eq.*, *versus* THE PORTLAND AND ROCHESTER RAILROAD CO.

R. S., c. 51, § 9, does not authorize the assignee of a judgment of the County Commissioners, recovered in favor of the owner of land against a railroad company, for land damages, to maintain a bill for " an injunction against the use or occupation of" the land taken, and in which the complainant has no interest.

BILL IN EQUITY, heard on demurrer.

The main allegations of the bill may be seen in the opinion. And the bill also alleged : —

That, after his appointment and qualification as administrator of Wood, and, after the organization of the Portland & Rochester Railroad Company, the complainant repeatedly presented his claim for satisfaction of the judgments aforesaid, to the directors of said last named company, and, both formally in writing, by his counsel, and informally, otherwise, has demanded payment of the same from said company. And, for a long time, in the years 1866 and 1867, by the express request of the directors of said company, and upon their express assurance that the said claims should receive their attention, he forbore to prosecute his remedies therefor. But, finding the same to be wholly without avail, he caused a further written notice of his claim and demand for payment of the same, at or before the expiration of thirty days from that time, to be served upon said directors, on the second day of May last past, as he is ready to prove. But the said judgments remain wholly unpaid.

That neither of said companies, to his knowledge or belief, ever denied that said judgments were due, or gave any reason, other than the alleged want of means, for not paying the same, or contended that they, or either of them, had acquired, or could acquire any lawful title to the use of the lands aforesaid, except by satisfying said judgments.

*P. Barnes*, for the complainant, contended, *inter alia*, that the complainant can maintain the bill.

1. That, as the statute has given the particular remedy in question, only by process in the form of a complaint in equity, and, as the rule of equity pleading forbids the suit to be brought in the name of the assignor, after he has parted with all interest in the claim, — which is, in a certain sense, a technical rule, and otherwise the suit might well be in the name of the judgment claimant, — the Court will look beyond the name of the assignee, to see what were the equitable rights of the assignor. And, if these are clearly made out, and are seen to have been passed over to the assignee, upon good grounds, for just consideration, without

impairment of any rights of the party respondent, and in such manner that the assignee has the means of recovering only what the assignor might have recovered, and nothing more, the Court will not permit the equitable rule, which bound the complainant, to be converted into an inequitable defence by the respondent.

2. It is manifest that the York & Cumberland Railroad Company, upon the facts admitted by the demurrer, would have been estopped from taking this ground of defence.

Nor does the circumstance that this proceeding is in the nature of process in equity prevent the effect of estoppel; for estoppels are fully recognized in equity, as abundant cases show, unless where they would work inequitable results.

The present defendant is bound by that same estoppel, on the ground of privity. It might not be estopped by what its predecessor had declared, or requested, or held out, in regard to an ordinary money debt, — but in respect to a claim of this peculiar kind, which adheres to the fundamental franchise, and which, in its origination, antedated all possible mortgages, the present company can never be in any better position, except by payment, than its constituent predecessor was, and can never make any defence to the person of the complainant, which its predecessor could not have made. In whatever way, upon whatever grounds, the original company acquired the right or the indulgence to use the land in question, the existing company has acquired nothing more. It is only a successor, in full privity, so far as this kind of claim is concerned, with the party which it succeeds. It must be taken to have had full knowledge, when it entered into possession, that the condemnation of these lands had never been compensated for, and that these land owners had never discharged their judgments. It must, therefore, have known that the use of these lands was a continual trespass by the original company, except upon some grounds of indulgence, and that its own possession would be an instant and continuing trespass, unless upon

temporary sufferance of the party controlling the judgment. And it must be held to have ascertained and known what the grounds of sufferance were, and to have intended, when it took possession, to avail itself of such further permissive use of the land as might be voluntarily conceded.

And this accords with the matters of fact, alleged and admitted by the pleadings. The acts and declarations of the present defendant, after it came into possession, and its omission, upon repeated demand, to allege any want of right or equity in the present plaintiff to prosecute this bill, are sufficient to estop the defendant at least from setting up this point of defence, — especially as the plaintiff represented a decedent estate, and was entitled to prompt intimation of a defence of such kind, if any was intended.

3. The terms of the statute are broad enough to give this plaintiff a direct right to the remedy now sought.

The language of the original statute of 1853 is, " the person to whom damages may have been awarded, or who may be legally entitled to receive the same, may file a bill in equity," &c.

The Revised Code says, — " a bill may be filed by the person entitled to recover the damages." It may be that the framer of the Act was thinking of the possible case of the representatives of a deceased land owner, and had the motive to extend the remedy to them. But mere conjecture of the motive of a legislator, while it may sometimes afford a slight aid, in solving doubtful provisions and uncertain phrases, is never to be used to limit the plain meaning of a direct and obvious enactment. This would be to substitute conjecture for interpretation. In the present statute, in both its forms, the language is broad enough and plain enough to include fairly, as well as literally, the case of an assignee of the judgment for damages. And no possible harm can ensue to any respondent in such case, by holding him to answer to such assignee. All facts, all principles of law, and all equities, are as well open between such parties, as upon an issue in the name of the assignor.

And, compare more particularly the statute, — R. S., c. 51, § 9, — where the expression, "*his* land," is to be interpreted in consistency with the broader expression, "any lands," employed in Stat. 1853, c. 41, § 7.

*Deane & Verrill*, for the respondents.

APPLETON, C. J. — This is a bill in equity by the plaintiff, as administrator on the estate of John M. Wood.

The bill alleges that Nathaniel Haskell, at the June term, 1851, of the Court of County Commissioners, for the county of Cumberland, obtained a judgment and warrant of distress against the York & Cumberland Railroad Company for land damages sustained by him, by reason of the location and building of the railroad of said company over the lands of said Haskell.

That, at the same session, Albion F. Harris and Benjamin F. Harris obtained judgment and a warrant of distress against the York & Cumberland Railroad Company for similar damages sustained by them.

That, at the request of the directors of said railroad company, John M. Wood, on Dec. 7, 1853, for a valuable consideration by him paid, received from said A. F. & B. F. Harris an assignment of their interest in the judgment recovered, and in the warrant of distress, — and, on Dec. 16, 1853, for a full consideration by him paid to Haskell, he received from him an assignment and transfer of his interest in the judgment recovered by him, and in the warrant of distress, — thus said Wood was the owner of said judgments and warrants of distress, and entitled to recover the payment of the same, — and that they still remain due and unpaid.

That the bondholders of the York & Cumberland Railroad Co., in Oct., 1865, organized as a corporation, by the name of the Portland & Rochester R. R. Co, — that said railroad company is subject to all the liabilities of said York and Cumberland R. R. Co., in respect to compensation for lands taken and used by them, — and is now maintaining

and operating its road through the lands of said Haskell and said Harrises.

That said defendant does not deny said judgments, and does not claim that they have acquired or could acquire any lawful title to the use of said lands, except by satisfying said judgments.

The prayer of the bill is, "that this said company, its officers, agents, and servants, and all of them, may be enjoined and restrained from using for the purposes of said road, the lands taken therefor, of the said Haskell and the said Harrises herein mentioned, until the damage aforesaid, with interest and cost, shall be paid, * * and for such other and further relief in the premises as shall be according to equity and good conscience, and to the Court shall seem meet."

To this bill the defendant has demurred.

The complainant insists that he is entitled to the remedy prayed for by virtue of R. S., 1857, c. 51, although the title to the land remains in those from whom assignments of the several judgments for land damages were taken.

The remedy by injunction is given to the party injured in his estates or their enjoyment. It is never a mode for the collection of debts. Neither Haskell nor the Harrises make any complaint of the use or occupation of these lands. John M. Wood never owned the premises nor had any estate therein, and the question is whether his administrator can maintain a bill against the defendant to enjoin them from using or occupying the lands of others.

The complainant's rights depend not upon the general principles of equity, but upon the special provisions of R. S., c. 51.

By § 2, a railroad corporation may purchase land necessary "for the location, construction and convenient use of its road," or they may take it under certain prescribed limitations and conditions.

By § 5, "the damages for real estate taken, are to be estimated by the County Commissioners, on a written application

of the corporation or *owner* of the estate, within three years after the location was filed, and are to be paid by the corporation. When no estimate is made within that time, the *owner* may maintain trespass or have any remedy provided in this chapter. When requested by the *owner*, the Commissioners are to require the corporation to give security for the payment of damages and costs as hereinafter provided."

By § 8, "when the corporation neglects for more than thirty days, to give the security required, the *owner* is entitled to the remedies by injunction provided in this chapter."

By § 9, "when the damages remain unpaid for more than thirty days after they are due and demanded, a bill in equity may be filed in Court, in term time or vacation, by the person entitled to them, praying for an injunction against the use or occupation of his land taken. * * At the second term, if payment has not been made, the injunction may be made absolute, and all rights acquired by taking the land and to whatever has been placed upon it, cease, and the *owner* may maintain any appropriate action for its recovery and protection."

The rights of the owner of the land taken are to be protected by the proceedings in equity. The bill is to be filed by the one owning the estate used and occupied. The injunction is against the use and occupation of *his* land taken, not against the use and occupation of somebody's else land taken. The redress by injunction is given to the owner of the estate used and occupied, and to no one else. If not paid, it is the owner who is to maintain the appropriate action for the recovery of the land taken.

If the estate had been conveyed to the person to whom the damages were assigned, a very different question would have been presented for determination, which it is not necessary to consider or discuss. But, upon a full examination of the statutes, we think this special remedy by injunction is

given to the owner of land, and as owner, and to no one else.        *Demurrer sustained.*

             *Bill dismissed with costs.*

CUTTING, WALTON, BARROWS, DANFORTH and TAPLEY, JJ., concurred.